1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10

11   WINSTON PRICE,                          )   Case No.: 1:11-cv-00377 – AWI–JLT
                                             )
12            Plaintiff,                     )   FINDINGS AND RECOMMENDATIONS
                                             )   DIRECTING JUDGMENT IN FAVOR OF THE
13        v.                                 )   DEFENDANT COMMISSIONER OF SOCIAL
                                             )   SECURITY AND AGAINST PLAINTIFF
14   COMMISSIONER OF SOCIAL SECURITY,        )   WINSTON PRICE
                                             )
15            Defendant.                     )
                                             )
16   _____        )

17          Winston Price ("Plaintiff") asserts he is entitled to disability insurance benefits and

18   supplemental security income under Titles II and XVI of the Social Security Act.  Plaintiff argues the

19   administrative law judge ("ALJ") erred in evaluating the medical evidence and evaluating the

20   credibility of testimony.  Therefore, Plaintiff seeks judicial review of the administrative decision

21   denying his claim for benefits.  For the reasons set forth below, the Court recommends the

22   administrative decision be **AFFIRMED**.

23                         **PROCEDURAL HISTORY**[1]

24          Plaintiff filed applications for supplemental security income and disability insurance benefits

25   on May 16, 2007, alleging disability beginning May 8, 2007.  (Doc. 15-6 at 2-13, AR at 106-117).

26   The Social Security Administration denied his claims initially and upon reconsideration.  (Doc. 15-5,

27

28          [1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

                                             1

1  AR at 62-65, 69-73.  After requesting a hearing, Plaintiff testified before an ALJ on June 3, 2009.

2  (Doc. 15-3, AR at 6-34). The ALJ determined Plaintiff was not disabled, and issued an order denying

3  benefits on August 11, 2009.  (Doc. 15-4, AR at 50-61).  Plaintiff requested review of the ALJ's

4  decision by the Appeals Council of Social Security, which was denied on January 4, 2011. (Doc. 15-3,

5  AR at 1-4).  Therefore, the ALJ's determination became the decision of the Commissioner of Social

6  Security ("Commissioner").

**STANDARD OF REVIEW**

8        District courts have a limited scope of judicial review for disability claims after a decision by

9  the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

10  such as whether a claimant was disabled, the Court must determine whether the Commissioner's

11  decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

12  ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

13  standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

14  *Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

15        Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

16  reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S.

17  389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole

18  must be considered, because "[t]he court must consider both evidence that supports and evidence that

19  detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

**DISABILITY BENEFITS**

21        To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to

22  engage in substantial gainful activity due to a medically determinable physical or mental impairment

23  that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C.

24  § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not
> only unable to do his previous work, but cannot, considering his age, education, and
> work experience, engage in any other kind of substantial gainful work which exists in
> the national economy, regardless of whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy exists for him, or whether he would
> be hired if he applied for work.

1    42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

2    *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of

3    disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other

4    substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

5                              **DETERMINATION OF DISABILITY**

6          To achieve uniform decisions, the Commissioner established a sequential five-step process for

7    evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  The process

8    requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the

9    period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled

10   one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether

11   Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to

12   perform other work existing in significant numbers at the state and national level.  *Id.*  In making these

13   determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony.

14   20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

15   **A.     Relevant Medical Evidence**

16         On December 1, 1995 and February 11, 1997, Dr. Benton Giapp saw Plaintiff for urinary

17   complaints and a health examination.  (Doc. 15-8 at 3-6, AR at 172-75).  These records do not indicate

18   Dr. Giapp treated Plaintiff for neck and back pain.  *Id.*

19         On August 10, 2007, Dr. Abbas Mehdi, a board eligible neurologist completed a consultative

20   orthopedic examination on Plaintiff.  (Doc. 15-8 at 21-25, AR at 190-194).  Plaintiff told Dr. Mehdi he

21   had not seen a doctor and was not taking any treatment.  *Id.*  Plaintiff complained of neck pain,

22   shoulder pain, lower back pain, right wrist pain, leg pain, and swelling.  (Doc. 15-8 at 21).  Plaintiff

23   explained these symptoms are constant and caused difficulty walking.  *Id.*  Furthermore, Dr. Mehdi

24   observed no evidence of a limp and noted Plaintiff had no difficulty getting on and off the examination

25   table.  *Id.* at 22.  Dr. Mehdi found Plaintiff's cervical spine range of motion, lumbar spine range of

26   motion, and the examination of the upper and lower extremities were all within normal limits.  *Id.* at

27   22-23.  Dr. Mehdi noted the hand grip strength, measured in pounds, of the right hand was 50-40-30

28

1    and the left was 95-90-90.  *Id.* at 23.  Dr. Mehdi diagnosed Plaintiff with "chronic pain syndrome."  *Id.*

2    at 24.  Significantly, Dr. Mehdi found Plaintiff had no impairments or external limitations.  *Id.*

3           On August 27, 2007, a state-agency medical consultant, Dr. Natalie T. Qualls, reviewed the

4    medical evidence and Dr. Qualls opined that Dr. Mehdi's observations were normal except for the

5    right hand grip measurements, which were inconsistent and therefore not valid.  (Doc. 15-8 at 28, AR

6    at 197).  Furthermore, Dr. Qualls noted the file indicated the Plaintiff had not received treatment or

7    medication for shoulder pain in the last twelve months.  *Id.*  On November 5, 2007, Dr. Ian Ocrant

8    reviewed the file and affirmed Dr. Mehdi's determination that there were no impairments or

9    limitations.  (Doc. 15-8 at 29-40, AR at 198-199).

10           On September 21, 2007, Plaintiff visited Clovis Community Hospital Emergency Room and

11   complained of chronic back pain.  (Doc 15-8 at 38, AR at 207).  Plaintiff was given Vicodin and told

12   to follow up at Sequoia Community Health.  *Id.*

13           Plaintiff was treated at University Medical Center from October 29, 2007 to May 4, 2009.

14   (Doc. 15-8 at 39-63, AR at 208-232).  Specifically, he complained of pain in his upper back, neck, and

15   right arm.  *Id.*  An x-ray report dated March 26, 2008, notes an impression of a "congenital anomaly

16   with failure of segmentation C3-4."  (Doc. 15-8 at 62). In addition, the report noted that the "anterior

17   and posterior segments of [the C3-4] vertebral bodies appear to be fused."  *Id.*  On July 16, 2008,

18   Plaintiff complained of chronic neck pain starting five years ago as a result of an accident.  *Id.* at 46.

19   On August 26, 2012, Plaintiff was seen for similar complaints of chronic neck pain.  *Id.* at 43.  Dr.

20   Thuy Nguyen noted plaintiff had "severe canal stenosis."  *Id.* at 39.

21           On June 2, 2009, Dr. Meg Verrees completed a form questionnaire regarding Plaintiffs

22   limitations and disability.  (Doc. 15-8 at 64, AR at 233).  Dr. Verrees indicated Plaintiff had

23   compression of the spinal cord such that he was precluded from full-time work.  *Id.*  Specifically, Dr.

24   Verrees indicated Plaintiff could not lift ten pounds and could not stand, sit, or walk for any extended

25   period.  *Id.*  Dr. Verrees listed Plaintiff's primary impairments as "difficulty with coordination of

26   movement of upper and lower extremities."  *Id.*  Dr. Verrees indicated she based these findings on the

27   stiff feeling in Plaintiff's arms and legs during an examination.  *Id.*  Dr. Verrees concluded Plaintiff

28   could not work at this time, and she believed he was disabled since August 2008.  *Id.*

**B.      Hearing Testimony**

Plaintiff testified before an ALJ on June 3, 2009.  (Doc. 15-3 at 9, AR at 8).  Plaintiff reported that he was 59 years old.  (Doc. 15-3 at 12).  Plaintiff explained that he completed the 12th grade and two years of college, but received no degree or certificate.  *Id.* at 12-13.  Plaintiff testified the last time he worked was in the previous month as a bartender, but he only worked on an on-call basis.  *Id.* at 13-14.  Plaintiff testified that before the bartending job, his last job was at Zacky Farms "pulling breasts of turkey" for eleven months.  *Id.* at 15.

Plaintiff testified he did some household chores in his house including the dishes, the laundry and sometimes cooking.  (Doc. 15-3 at 24).  However, Plaintiff said he had trouble completing some of these tasks because if he stood for too long his left hip would "give out" and he got dizzy if he had to pick anything up.  *Id.* at 25.  Plaintiff testified his hobbies included shooting pool, which he was able to do every other month.  *Id.*  Also, Plaintiff reported he watched TV for five hours per day and listened to the radio for about six hours per day.  *Id.* 25-26.

Plaintiff explained he could only stand for a half an hour at a time because his back and neck would start hurting.  (Doc. 15-3 at 26).  He could only sit an hour and a half before getting up and moving around due to back and neck problems.  *Id.*  Plaintiff reported he could walk for about an hour.  *Id.*  In addition, Plaintiff testified he would lay down for two hours at a time for a total of about eight hours per day.  *Id.* at 27.  Plaintiff testified he did not drive because of an issue with his license but was able to use the public bus system.  *Id.*

Plaintiff explained that he has constant "tingling pain" in his neck.  (Doc. 15-3 at 28).  Furthermore, Plaintiff testified that he had problems turning his neck to the right and when looking down he would get dizzy.  *Id.*  Additionally, Plaintiff testified he received a shot in his back through which dye was injected, and he felt like "something was crawling up his back."  *Id.* at 28-29.

Thomas Dachelet, a vocational expert ("VE") testified after Plaintiff.  (Doc. 15-3 at 29).  The VE characterized a variety of Plaintiff's past relevant work including: construction labor, meat cutter, bartender, poultry dresser, janitorial or labor, driver of a forklift, a personal driver, and warehouse laborer.  *Id.* at 29-30.  He identified Plaintiff's work at Zacky Farms as a "poultry dresser" and reported that this was light, unskilled work.  *Id.* at 31.

The ALJ then asked the VE to consider a hypothetical person of Plaintiff's age, education, and work experience. (Doc. 15-3 at 30-31). This person was capable of light physical exertion but was limited such that he could reach and work overhead only occasionally with the right non-dominant hand. *Id.* The VE testified that a person with these limitations could perform the Plaintiff's past relevant work as a bartender, poultry dresser, and driver. *Id.* at 32. In addition, the VE testified that the hypothetical person could perform all of the jobs in the national economy listed as light and unskilled by the administration. *Id.*

Next, the ALJ added a further limitation in which the hypothetical person would "require additional unscheduled breaks totaling an hour or more a day." (Doc. 15-3 at 32). The VE explained that with this limitation there were no jobs in the national economy that could be performed. *Id.*

Plaintiff's counsel asked the VE if the first hypothetical posed by the ALJ would change in light of the following restrictions: "[N]o driving, no work requiring climbing of ladder or use of power equipment, no repetitive bending or lifting, and lifting less than 20 pounds." ((Doc. 15-3 at 32-33). The VE testified that the jobs available under hypothetical one, which included "driver," would not be available. *Id.* at 33. Furthermore, the VE reported that sedentary and light unskilled jobs in the national economy that included driving, would no longer be available. *Id.*

**C.      The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff met the insured status requirements of the Social Security Act through September 30, 2010. (Doc. 15-4, AR at 55). Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 8, 2007.[2] *Id.* At step three, the ALJ determined Plaintiff had severe impairments, including cervical spinal stenosis and degenerative disc disease. *Id.* These impairments did not meet or medically equal a listed impairment. *Id.* Next, the ALJ determined Plaintiff had the residual functional capacity to "[L]ift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk 6 hours in an 8-hour work day; and sit 6 hours in an 8-hour work day. He could occasionally reach overhead and work overhead with the non-dominant right arm." *Id.* at 56. The ALJ concluded

---

[2] Although Plaintiff worked after the alleged onset date, the ALJ determined this work did not constitute substantial gainful activity. AR at 55.

1  Plaintiff was able to perform past relevant work as a poultry dresser.  *Id.* at 60.  Therefore, the ALJ

2  concluded Plaintiff had not been under disability under the Social Security Act from the date of the

3  alleged on-set to the date of the decision.  *Id.*

4  **D.       New Evidence before the Appeals Council**

5           Plaintiff submitted additional medical evidence to the Appeals Council, which included three

6  sets of "General Relief" applications from The County of Fresno Employment and Temporary

7  Assistance Department, signed by Drs. Ashkan Imanzahral[3], Verrees, and Hysell.  (*See* Doc. 15-8 at

8  66-72).  The Appeals Council "found that this information does not provide a basis for changing the

9  Administrative Law Judge's decision."  (Doc. 15-3 at 2-4, AR at 1-3).  Concluding the ALJ's decision

10  was not "contrary to the weight of all the evidence now in the record," the Appeals Council denied

11  Plaintiffs' request for review.  *Id.*

12                                        **DISCUSSION AND ANALYSIS**

13  **A.       Additional Medical Evidence**

14           On July 10, 2009, Dr. Verrees completed "General Relief" form used by the County of Fresno.

15  AR at 237-38.  Dr. Imanzahral completed the same form for Plaintiff on July 13, 2009.  *Id.* at 235-36.

16  Both physicians noted Plaintiff was unable to perform repetitive hand movements, bending or lifting,

17  and standing or walking was limited to less than fifteen minutes per hour.  *Id*. at 235, 237.  Similarly,

18  both doctors indicated Plaintiff was temporarily unable to work but would be reevaluated in January

19  2010.  *Id.* at 236, 238.  Dr. Imanzahral noted Plaintiff had spinal cord compression.  *Id.* at 235.

20  Likewise, Dr. Verrees opined Plaintiff had "spinal cord compression, posterior decompression,

21  multiple laminectomies," but was "stronger" and his previous complaints of numbness had changed to

22  complaints of tingling only.  *Id.* at 237-38.

23           On August 24, 2009, Dr. Hysell opined Plaintiff was unable to work, but did not indicate any

24  limitations.  *Id.* at 240.   He noted Plaintiff got "dizzy and has neck pain when lifting."  *Id.*  Dr. Hysell

25  concluded Plaintiff's condition was permanent.  *Id.* at 240-41.

26

27

28           [3] Plaintiff asserts that this form was signed by Dr. Nguyen.  (Doc. 17 at 9).  Although stamps for both Dr. Nguyen and Dr. Imanzahral appear on the form, the legible signature is that of Dr. Imanzahral.  (Doc. 15-8 at 67, AR at 236).

1    Plaintiff argues the Appeals Council "stand[s] in place of the ALJ" and must "provide legally

2    sufficient reasons to reject opinions and findings contained in th[e] supplemental evidence." (Doc. 17

3    at 9).  However, the Appeals Council is required only to "review the case if it finds the administrate

4    law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of

5    record," which includes any new and material evidence submitted by the claimant.  20 C.F.R. §

6    404.976.  Here, the Appeals Council did not find the weight of the evidence was contradicted by the

7    forms completed by Drs. Nguyen, Verrees, and Hysell.  (Doc. 15-3 at 2-4, AR at 1-3).  Accordingly,

8    the Appeals Council had no further obligation to explain its denial of review or further address the

9    new evidence.

10    Nevertheless, when the Appeals Council considers evidence provided by a claimant after the

11    ALJ's decision, the Court reviews both the ALJ's decision and additional material submitted to the

12    Appeals Council.  *Ramirez v. Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993).  Recently, the Ninth

13    Circuit explained:

14    > [W]hen a claimant submits evidence for the first time to the Appeals council, which
15    > considers that evidence in denying review of the ALJ's decision, the new evidence is
   > part of the administrative record, which the district court must consider in determining
16    > whether the Commissioner's decision is supported by substantial evidence.

17    *Brewes v. Comm'r of Soc. Sec. Admin.*, 2012 U.S. App. LEXIS 12064, at *2 (9th Cir. June 14, 2012).

18    Accordingly, the Court must consider new evidence submitted to the Appeals Council in its

19    determination of whether substantial evidence supports the disability determination.  *Id.* at *9 (citing

20    *Perez v. Chater*, 77 F.3d 41, 45 (2nd Cir. 1996) ("Because the regulations require the Appeals Council

21    to review the new evidence, this new evidence must be treated as part of the administrative record.")).

22    **B.    The ALJ's Evaluation of the Medical Evidence**

23    In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating

24    physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-

25    examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830

26    (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight in

27    disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on

28    the ultimate issue of a disability.  *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881

8

1    F.2d 747, 751 (9th Cir. 1989).  In addition, an examining physician's opinion is given more weight

2    than the opinion of a non-examining physician.  20 C.F.R. § 404.1527(d)(2).

3            An ALJ may reject the contradicted opinion of a physician with "specific and legitimate"

4    reasons, supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830; *see also Thomas v.*

5    *Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  When there is conflicting medical evidence, "it is the

6    ALJ's role to determine credibility and to resolve the conflict."  *Allen v. Heckler*, 749 F.2d 577, 579

7    (9th Cir. 1984).  The ALJ's resolution of the conflict must be upheld by the court when there is "more

8    than one rational interpretation of the evidence."  *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016,

9    1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the

10   evidence, and if the evidence can support either outcome, the court may not substitute its judgment for

11   that of the ALJ").

12           Plaintiff contends the ALJ erred in his evaluation of the medical evidence, and gave improper

13   weight to the opinions of the consultative examiner and State Agency physicians.  (Doc. 17 at 12).

14   Plaintiff argues Dr. Verrees and Dr. Hysell "may have treated Plaintiff," and had more familiarity with

15   him than Dr. Mehdi, who performed the consultative examination.  *Id.*  In addition, Plaintiff contends

16   "the consultative examiner could not controvert treating physicians reporting 2 years later."  *Id.*  On

17   the other hand, Defendant contends the ALJ's discussion of the medical evidence was sound, and the

18   ALJ properly relied upon the opinion of Dr. Mehdi.  (Doc. 20 at 7-12).

19           1.      The ALJ set forth specific and legitimate reasons to reject the opinion of Dr. Verrees.

20           Here, the ALJ declined to adopt opinion of Dr. Verrees because the opinion was "base[d] upon

21   the idea that there is spinal cord compression" and there was no objective medical evidence of the

22   condition.  (Doc. 15-4 at 26, AR at 59).  Specifically, the ALJ noted: "The only objective evidence of

23   a physical problem in the cervical area is the x-ray evidence of a congenital anomaly consisting of

24   what amounts to a fusion of two vertebrae.  The record does not show any other studies, such as MRI.

25   There is no objective evidence of compression of the spinal cord."  *Id.*  In addition, the ALJ observed:

26           Dr. Verrees indicates Mr. Price's spinal compression causes difficulty with coordination
             of movement of upper and lower extremities. She does not describe such difficulties,
27           and does not say what measurements, if any, she made, or how she arrived at that
             opinion.  There are no such notes in any of the medical records. Quite the contrary, Mr.
28

9

Price moves with ease onto and off of examining tables. He walks without a limp or other evidence of compromised coordination. His consulting orthopedic examination was completely normal. . . . Dr. Verrees says Mr. Price cannot sit, stand, or walk. But he stood, walked, and sat at the hearing. When he was examined by the consultative examiner, the doctor noted Mr. Price moved about normally, had no limp, and got on and off the table. He uses public transportation which requires one to stand and walk, although sitting may be optional. When asked how long this severe, immobilizing disability has existed, Dr. Verrees said it goes back to August, 2008. If that were true, Dr. Thuy Nguyen, who examined Mr. Price on May 4, 2009, would likely have made a note of such immobility.

(Doc. 15-4 at 26-27, AR at 59-60).  Accordingly, the ALJ summarized the facts and conflicting clinical evidence, and the ALJ set forth a number of reasons to reject the opinion of Dr. Verrees, whether or not she could be considered a "treating physician."[4]

First, an opinion may be rejected when it is "conclusory and brief" and lacks support of clinical findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Consequently, the Ninth Circuit has established that an ALJ may reject a physician's opinion where the opinion lacks supportive objective evidence.  *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (a physician's opinion may be rejected "if brief and conclusory in form with little in the way of clinical findings to support [its] conclusion"); *Crane v. Shalala*, 76 F.3d 251, 253(9th Cir. 1996) ("The ALJ permissibly rejected… reports that did not contain any explanation of the bases of their conclusion"); SSR 96-2p, 1996 SSR LEXIS 9, at *9 (the opinion of a physician is not entitled to controlling weight when the "opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record").  Therefore, the lack of supporting objective medical evidence was a specific, legitimate reason for discounting the opinion of Dr. Verrees.

In addition, the ALJ observed the conflicts in the medical record between the opinions of Dr. Verrees and Dr. Mehdi, as well as the contradiction of his observations at the hearing.  Although Dr.

---

[4] When an ALJ gives less weight to a treating physician's opinion, the ALJ must "set out a detailed thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Cotton*, 799 F.2d at 1408.  On the other hand, when an ALJ rejects the contradicted opinion of an examining doctor, the ALJ must provide "specific and legitimate reasons" for doing so that are supported by the record.  *Lester*, 81 F.3d at 830.  Notably, the record does not indicate that Dr. Verrees is a "treating physician."  Indeed, as noted above, Plaintiff asserts Dr. Verrees was a neurosurgeon "who *may have treated Plaintiff*."(Doc. 17 at 12, emphasis added).

10

1  Verees opined Plaintiff was "not able to sit, stand or walk" (Doc. 15-8 at 64), Dr. Mehdi observed

2  Plaintiff moved about normally without a limp, and Plaintiff "stood, walked, and sat at the hearing."

3  (Doc. 15-4 at 27).  These observations were relevant considerations for not adopting the opinion of Dr.

4  Verrees.  A medical opinion may be rejected when it is "unsupported by the record as a whole."

5  *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003).  In addition, the

6  ALJ's personal observations are relevant to the disability determination.  *See Sample v. Schweiker*,

7  694 F.2d 639, 642 (9th Cir. 1999) (an ALJ may draw logical inferences); *Drouin v. Sullivan*, 966 F.2d

8  1255, 1258-59 (9th Cir. 1992).  Consequently, the ALJ provided a number of reasons supporting his

9  decision to not adopt the opinion of Dr. Verrees that Plaintiff was unable to work.

10  Notably, the opinions of Dr. Verrees and Dr. Imanzahral offered to the Appeals Council after

11  the decision suffers from the same infirmities.  Although the physicians diagnosed Plaintiff with a

12  spinal cord compression, the opinions that he was unable to work are offered on a conclusory, check-

13  list form, without the support of objective medical evidence.

14      2.    The ALJ's evaluation is supported by substantial evidence in the record.

15  The Commissioner explained medical and nonmedical evidence may constitute substantial

16  evidence, and clarified the term:

17  > [Substantial evidence] is intended to indicate that the evidence that is inconsistent with
18  > the opinion need not prove by a preponderance that the opinion is wrong.  It need only
   > be such relevant evidence as a reasonable mind would accept as adequate to support a
19  > conclusion that is contrary to the conclusion expressed in the medical opinion.

20  1996 SSR LEXIS 9 at *8.  When an examining physician "provides independent clinical findings that

21  differ from the findings of the treating physician, such findings are substantial evidence." *Orn v.*

22  *Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citation omitted).  In addition, the opinion of a non-

23  examining physician may be substantial evidence when consistent with other evidence in the record.

24  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

25  Here, the ALJ gave "substantial weight" to the opinion of Dr. Mehdi, the consultative

26  examiner, as "he took a careful history and performed a thorough examination" of Plaintiff.  (Doc. 15-

27  4 at 27, AR at 60).  The opinion of Dr. Mehdi, an examining physician, may constitute substantial

28  evidence to support the ALJ's conclusion if he offered independent clinical findings which resulted in

1   (1) diagnoses differing from those offered by the treating physician and are supported by substantial

2   evidence, or (2) findings based on objective medical tests that the treating physician has not

3   considered.  *See Orn*, 495 F.3d at 632; *Magallanes*, 881 F.3d at 751.  Importantly, Dr. Mehdi

4   performed an orthopedic examination, and tested Plaintiff's range of motion of his cervical and lumbar

5   spines, as well as his reflexes and strength.  (Doc. 15-8 at 22-24, AR at 191-93).  There is no evidence

6   of similar tests being performed by a treating physician such as Dr. Nguyen.  In addition, the diagnosis

7   of "chronic pain syndrome" differed from those offered by other physicians.  Consequently, the

8   opinion of Dr. Mehdi is substantial evidence in support of the ALJ's decision.

9        In addition, the ALJ gave "substantial weight" to the opinions of Dr. Qualls and Dr. Ocrant.

10  (Doc. 15-4 at 27, AR at 60).  As noted by the ALJ, Dr. Qualls and Dr. Ocrant opined Plaintiff was not

11  disabled. *Id.*  These conclusions are consistent with the opinion of Dr. Mehdi, and constitute

12  substantial evidence in the record.  *See Tonapetyan*, 242 F.3d at 1149 ("Although the contrary opinion

13  of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting

14  a treating or examining physician's opinion, it may constitute substantial evidence when it is

15  consistent with other independent evidence in the record"); *see also Magallanes*, 881 F.2d at 752.

16  **C.      Credibility of Plaintiff**

17       In determining credibility, an ALJ must determine first whether objective medical evidence

18  shows an underlying impairment "which could reasonably be expected to produce the pain or other

19  symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007), quoting *Bunnell*

20  *v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  Here, the ALJ found Plaintiff's "statements about the

21  intensity, persistence, and limiting effects of those symptoms are not credible to the extent that they

22  are inconsistent with [his] assessment of [Plaintiff's] residual functional capacity."  (Doc. 15-4 at 26,

23  AR at 59).

24       An adverse finding of credibility must be based on clear and convincing evidence where there

25  is no affirmative evidence of a claimant's malingering and "the record includes objective medical

26  evidence establishing that the claimant suffers from an impairment that could reasonably produce the

27  symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160

28  (9th Cir. 2008).  The ALJ may not discredit a claimant's testimony as to the severity of symptoms only

1  because it is unsupported by objective medical evidence.  *See Bunnell*, 947 F.2d at 347-48.  In

2  addition, the ALJ "must identify what testimony is not credible and what evidence undermines the

3  claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834; *see also Dodrill v. Shalala*, 12 F.3d 915,

4  918 (9th Cir. 1993).

5         Credibility findings "must be sufficiently specific to allow a reviewing court to conclude the

6  ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the

7  claimant's testimony."  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).  Here, the ALJ

8  considered Plaintiff's inconsistent statements and the medical evidence.  In general, these are proper

9  factors in a credibility determination.  *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002)

10  ("the ALJ may consider at least the following factors when weighing the claimant's credibility:

11  claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between her

12  testimony and her conduct, claimant's daily activities, her work record, unexplained, or inadequately

13  explained, failure to seek treatment, and testimony from physicians and third parties concerning the

14  nature, severity, and effect of the symptoms of which claimant complaints") (citation omitted).

15         *Inconsistent statements and work history*

16         An ALJ may consider "inconsistent statement concerning the symptoms" a claimant alleges as

17  part of a credibility determination.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Here, the

18  ALJ noted several inconsistencies in Plaintiff's testimony and his written statements about his

19  limitations.  For example, the ALJ noted:

20      [Plaintiff's] testimony that he can stand for ½ hour is not consistent with his written
    statement that he can stand for 3 or 4 hours.  His testimony that he has had problems
21      with his right shoulder and neck since his bicycle accident in 2003 is not consistent
    with his written statement that the pain began in 2006.
22

23  (Doc. 15-4 at 26, AR at 59).  In addition, the ALJ noted that there was a discrepancy between when

24  Plaintiff testified his disability began and when he began to seek treatment, specifically Plaintiff did

25  not seek treatment until after he filed for benefits.  *Id*.  Further, the ALJ observed: "[Plaintiff's]

26  statement that Dr. Giapp treated him for neck and shoulder pain is not consistent with the medical

27  records of the doctor, which show no such complaint and no such treatment."  *Id.*

28

1          Moreover, the ALJ noted Plaintiff's statements to doctors about why he stopped work were

2    not consistent with his written statement that he stopped work because his job ended.  *Id.* (citing AR at

3    132).   As a separate consideration for Plaintiff credibility, the ALJ may consider Plaintiff's work

4    history.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (holding the ALJ properly

5    considered, as part of the credibility assessment, the claimant's admission that he left his job for

6    reasons other than his alleged impairment); *Drouin*, 966 F.2d at 1259 (as part of the credibility

7    determination, the ALJ considered that the claimant had not lost her jobs because of her alleged severe

8    pain).  Thus, these statements were valid considerations in finding Plaintiff lacked credibility.

9          *Medical evidence*

10          Generally, "conflicts between a [claimant's] testimony of subjective complaints and the

11   objective medical evidence in the record" can constitute "specific and substantial reasons that

12   undermine . . . credibility."  *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir.

13   1999); *see also* SSR 96-7p, 1996 SSR LEXIS 4, at *2-3 (the ALJ "must consider the entire case

14   record, including the objective medical evidence" in determining credibility, but statements "may not

15   be disregarded solely because they are not substantiated by objective medical evidence").  To rely

16   upon the medical evidence, "the ALJ must specifically identify the testimony she or he finds not to be

17   credible and must explain what evidence undermines the testimony."  *Holohan v. Massanari*, 246 F.3d

18   1195, 1208 (9th Cir. 2001).

19          Here, the ALJ noted the only objective medical evidence of a problem is the x-ray of the

20   cervical area which shows a congenital anomaly.  *Id.*  The ALJ explained the medical record does not

21   contain evidence such as an MRI or other tests to demonstrate spinal cord pressure.  *Id.*  The ALJ

22   noted the evidence of a congenital anomaly alone is not sufficient to create a disability because the

23   problem has existed his entire life, during which Plaintiff worked without treatment or complaint.  *Id.*

24   The ALJ observed that while Plaintiff complained of pain from a bike accident which occurred in

25   2003, the medical record shows that Plaintiff was not under any treatment or medication for such pain

26   for more than a year before filing for Social Security Disability.  *Id.*  Because the ALJ provided

27   specific examples of which testimony was not credible, and what evidence suggested Plaintiff was not

28   credible, consideration of the medical evidence was relevant to the adverse credibility determination.

14

1 | *See Lester*, 81 F.3d at 834; *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies

2 | with medical evidence supports a rejection of a claimant's credibility).

3 | Given considerations made by the ALJ, he met his burden to make "a credibility determination

4 | with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit

5 | [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).   Consequently,

6 | the adverse credibility determination was proper.

7 | **FINDINGS AND RECOMMENDATIONS**

8 | For all these reasons, the ALJ's determination that Plaintiff was not disabled is supported by

9 | substantial evidence in the record.  Accordingly, the conclusion that Plaintiff is not disabled must be

10 | upheld by the Court.   *See Sanchez*, 812 F.2d at 510.

11 | Based upon the foregoing, **IT IS HEREBY RECOMMENDED**:

12 | 1.    The Administrative Law Judge's decision be **AFFIRMED**; and

13 | 2.    The Clerk of Court be **DIRECTED** to enter judgment in favor of Defendant,

14 | Commissioner of Social Security and against Plaintiff, Winston Price.

15 | These Findings and Recommendations are submitted to the United States District Judge

16 | assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local

17 | Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen

18 | days after being served with these Findings and Recommendations, any party may file written

19 | objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's

20 | Findings and Recommendations."  The parties are advised that failure to file objections within the

21 | specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d

22 | 1153 (9th Cir. 1991).

23 |

24 |

25 | IT IS SO ORDERED.

26 | Dated:   __July 17, 2012__                                   ___/s/ Jennifer L. Thurston__

27 | UNITED STATES MAGISTRATE JUDGE

28 |